Welcome to the second day of our panel hearing in Atlanta. Judge Lagoa and I are very happy to welcome Judge Virginia Covington from the Middle District of Florida. She has sat with us a number of times before in various locations, but we're glad she's here with us in Atlanta today. You're familiar, I hope, with our lighting system. When the yellow light goes on, that means that your time is drawing to a close, so begin to wrap up. If we take you beyond the red light, just keep going. You'll be on our time and not yours. And with that, we're ready to begin with our first case, number 24-10533, United States v. Juan Martinez. Mr. Mason. Good morning, Your Honors. May it please the Court? Caleb Mason, representing the defendant and appellant in this matter, Juan Martinez, and I also tried this case. I would like to start with the legal impossibility issue, and specifically with the cases that the panel has directed the parties to consider, and then, if we have time, briefly discuss the sentencing issue. The panel has directed the parties to address these two cases, the Johnson case from 1907 and the Hesser case at 40 F. 4th, 1221. I have reviewed both of those cases. Both cases are on point, and I think both cases established the key proposition before us. Legal impossibility remains a viable doctrine in the 11th Circuit. It applies to this case, and it does create a defense to the charge of conspiracy. We could quote from the Hesser case. There is a problem with the government's argument. Attempting to do something non-criminal is not a crime. Attempt and conspiracy are the two categories of inchoate crime that factual impossibility will not provide a defense to, but legal impossibility will. The Johnson case from 1907 is a conspiracy case, and I will briefly mention the facts of those two cases and how they relate to the case. Well, let's talk about, I mean, I think on first read that Johnson supports the notion that legal impossibility can sometimes be a defense to a conspiracy charge. That's at least my understanding, and I don't speak for my colleagues. But, tell me why it was legally impossible for Mr. Martinez to conspire in this case. Yes, Your Honor. The documents at issue in this case were documents from Gulfstream. They were technical documents pertaining to the measurements that one would take at various points on the wing in a wind tunnel test, and one of the documents was a document that identified the abbreviations that were used for various parts. The company at issue, the company that my client was working as a consultant for was called APAC, and it was working jointly with Gulfstream pursuant to a contract that we call the PIA, the Proprietary Information Agreement. That was a contract between the two companies that allowed for and expressly provided for the sharing of these proprietary documents. But, and this is, and then I'm going to let you speak because I want to hear your full answer, but I want you to address this. The allegation and the, at least some of the proof at trial as I understand it, was that the documents, the materials from Gulfstream, were used not for Gulfstream's benefit after Gulfstream said it didn't want to keep going with the venture, and they were used for the benefit of your client's employer and shared with third parties, which the agreement didn't permit. So, that's my concern with legal impossibility masking over the facts of this case. Yes, Your Honor, and then that was certainly the government's contention. So, the contract provided for these documents to be used for the purpose of evaluating the new technology for wing de-icing for the, quote, potential use on Gulfstream aircraft. That was how my client first was hired as a consultant. He started his work in first, his first assignment was to communicate with Gulfstream and answer a bunch of questions that the Gulfstream engineers had posed about the project. Gulfstream later told APAC, now my client was not an officer or principal of the APAC company, he was a consultant simply working on the wind tunnel project, Gulfstream later told the president of APAC that it did not have an interest in this technology. But what it did not do was cancel the contract. Right, but didn't, but isn't there, didn't the jury, wasn't the jury presented with evidence that there were surreptitious emails that were sent back and forth from your client and others with, you know, subject lines that had nothing to do with the attachment clearly showing an intent to conceal what was being attached? Oh, yes, your honor. This is just like the Hesser case in that respect. In the Hesser case, the defendant hid gold bars under his floorboards because he did not want the IRS to find them. There was absolutely evidence from which the jury could, and it appears did, conclude that my client was trying to conceal the fact that he was using these Gulfstream documents. And they did exchange, my client and a fellow named Gilbert Basaldua did indeed exchange emails where they had changed, either one of them had changed the subject line to time sheets. Right, but normally if you are entitled and you have the right to possess documents and you are sharing them between Company A and Company B who have a contract or a contractual relationship, you're not sending emails surreptitiously. For sure, your honor. I think the mens rea issue, the government had proof that my client was intending to conceal his use of these documents. Absolutely, I don't think we contest that and we couldn't contest that given the emails. What makes this case interesting is that legal impossibility as a doctrine does not care about whether the defendant had the mens rea of attempting or conspiring to commit a crime if that thing was not really a crime. And to quote from the Blankenship, I'm sorry, from the Johnson case, if the facts constituting the purpose, when fully stated, show that they constitute no crime, the indictment is fatally defective. In Johnson, the three conspirators also tried to conceal. But in Johnson, it involved concealing something from a trustee and the trustee himself was involved. So therefore, it was a legal impossibility to commit the crime. That's correct, your honor, but all three conspirators. Not the case here. How is, what is the legal impossibility here for the conspiracy charge? The legal impossibility is that the contract created a legal right which gave the authorization to APAC and its consultants, if that term is in the contract, to have these documents. And so even though my client may have believed that he was not supposed to have them and may have tried deliberately to hide that fact, that does not matter. And I would read to you from United States versus Blankenship. This is an 11th Circuit case from 2004, 382 F 3rd 1110. The pin site is 1134. Here's the quote. The contracts at issue actually created the legal rights they purported to create. The creation of such legal rights is the purpose of a contract. Here we had a contract that created a legal right. That legal right gave APAC and its consultants, including Mr. Martinez, the right to possess these documents. Mr. Martinez may not have even known that. That doesn't matter. But he did, but didn't he do more than possess? I mean, I take your argument that if the contract was still a legally binding document and hadn't been terminated formally by Gulfstream, APAC and people who worked for it were entitled to possess the documents. But they couldn't have sold those documents to, you know, Lockheed, right? That's absolutely right, Your Honor. What they were allowed to do was two things. They were allowed to possess them and they were allowed to use them to develop their de-icing technology. That was all written in the contract and that is what they did. That's what Mr. Martinez did. But he disclosed them also. He disclosed some of the documents also to third parties who weren't authorized to see them, review them, do anything with them, right? I don't think that's what the evidence was. No, Your Honor. Who did he show the documents to? Nobody. What he was alleged to have shown to a third party was his own work product. Using Gulfstream technology as set forth in the papers. Otherwise, it wouldn't mean anything. That's right. So it's not technology. The documents were from old Gulfstream wind tests from a decade earlier. The only thing that Mr. Martinez knew was what measurement points on the wing the FAA would want to have measured. Then he used those to design his own wind tunnel test because APEC only had the money to pay for a single run at this expensive wind tunnel. So he then took his own work product, showed it to a third party and said, can you, quote, wordsmith this for me? The government argued that that showed his intent to make the final work product look as though it had not relied at all on Gulfstream's underlying documents, but he did not give the Gulfstream documents to any third parties. I think the important point here, Your Honor, is that I wanted to argue this to the jury. Maybe the jury wouldn't have agreed, but I was precluded from even arguing it. I was told, I was ordered not to make this argument at all. And that the only thing I could say to the jury was this might affect his mens rea. And I obeyed that order, of course. This brings up, and I know you did that, is legal impossibility an issue for a jury when it applies or is it an issue of law for the court at the appropriate time? Well, I think it has to be a jury question to the extent that it becomes a mixed question of law and fact, right? If there's a ruling that interprets, for example, a contract and that becomes part of the jury instruction or the jury charge, then that's a legal issue. And then the jury has to make findings as well that implicate that legal rule. So I have thought about this a lot over the past couple of years, and I cannot think of any reason why an attorney should be precluded, forbidden from making an argument to the jury if it has anything at all connected to an issue that the jury could decide. The jury had to decide what sort of agreement Mr. Martinez was in with the alleged co-conspirators. They had to decide whether he intended to violate that agreement. And they had to decide, this was presented to them, they had to decide this question of whether or not he had actually committed an underlying offense or attempted or conspired to commit an underlying offense. And again, they didn't have to find that he committed the underlying offense, right? Committed, attempted or conspired. Any one of those would work. Well, you just had to have the intent, correct? He doesn't have to actually commit the substantive crime. There has to be an affirmative act, though, right? It's not pure intent crime. There has to be an affirmative act. Right, but the act doesn't have to be the crime. That's correct. But he admitted that he knew that he was sending proprietary data to people he knew had no right to view it or use it. Mr. Martinez had the intent, there was sufficient evidence for the jury to find and the jury did find, that he had the intent, that he believed that he was committing this offense of unauthorized use of the trade secrets. The point was that I wanted to argue and that I think is a real legal argument is that it does not matter what his intent was if, in fact, the contract created a legal right for him to possess and use these documents. And as for other questions around the margins of what were some other potential things that he might have done that went outside that sphere of authorization, that would have been a jury question and I wanted to argue it. That's why we're here. I wanted to make these arguments to a jury and let the jury decide and I was precluded from doing that and I think that violated my client's constitutional rights. My clock is ticking down. Thank you, Your Honor. You can continue and eat into your rebuttal time if you would like or you can keep your rebuttal time, so it's your choice. I will keep my rebuttal time, Your Honor. Okay, thank you very much. How do I pronounce your name, Stuchel? May it please the Court. Good morning, Your Honor. It's James Stuchel. Stuchel, okay. Stuchel for the United States. Morning. Good morning. The district court did not abuse its discretion in preventing Mr. Martinez from making his proposed argument to the jury. Why is abuse of discretion the right standard? It says that in every case I've seen regarding the district court's inerrant authority to curtail a party's argument. That can't be right. I mean, if you wanted to, if you were charged with murder on federal land, one of the few times that murder is a federal offense, and you wanted to argue self-defense, and the district court said, nah, I'm not going to let you argue self-defense, and you had a factual basis for it, we don't review that for abuse of discretion. That doesn't make sense. I'm sure you would, and it would definitely be an abuse of discretion in that case because the defense was legally permissible. This case law says that the district court has discretion to prevent a litigant from making any legally untenable argument, and his argument was legally untenable. Because legal impossibility is not a valid theory as against a conspiracy charge? No, that's not the reason why. I did suggest that in my briefs, and I withdraw that based on the, based on United States v. Taylor. I did not find Taylor, Taylor's a 1907 case, and I withdraw that, but my withdrawal of that argument does in no way weaken my case here today. The district court itself did not rely on a finding that legal impossibility doesn't apply to conspiracy. At the beginning of its, what I call, erudite opinion, it discussed all these recent opinions from other circuits, basically a finding that the distinction between legal and factual impossibility is really, it's unclear and it's not really helpful. And anyway, no matter what you call it, the real issue is whether the underlying legal proposition underlying the claim is valid. So all those circuit courts essentially abolished the distinction. The district court noted them, but it did not do that. Now, in my brief, I read those two. I was persuaded. I believed erroneously that this court had never held that legal impossibility applied to conspiracy. So I thought I would save us all the trouble of such a case in the future by asking this court to rule that legal impossibility does not apply to conspiracy. But I believe strongly in the panel precedent rule. The panel precedent rule applies to United States v. Taylor. You mean Johnson? Johnson, I'm sorry. The 1907 case. That's correct. That's correct. But isn't that too broad of a sweep that you're asking us to do? No. Tell me why. Not at all. Well, there are a number of reasons, but at first, I think it's really important to clarify specifically what the district court's order did and did not do. It did not prevent Martinez from arguing to the jury that he lacked intent. In fact, Mr. Martinez says at page 34 of his opening brief in this court that his primary argument was that he had no intent to steal because he reasonably believed that the companies were collaborating. That's his exact. Let me say that again. His primary argument was, I had no intent to conspire to commit a legal crime because I thought the companies were collaborating. That doesn't mean he didn't have another argument that he wanted to put forth. I'm sorry? That doesn't mean he didn't have another argument that he wanted to put forth. People argue the alternative all the time. That's correct. But the district court didn't prevent him from arguing that. It also didn't prevent him from arguing the PIA. He did it three different times. He picked up the PIA. He waved in front of the jury. He quoted three different paragraphs verbatim from it. And most importantly of all, the district court did not prevent Martinez from arguing that the PIA proved he lacked intent. But intent is a very different issue than legal impossibility. I'm not assuming that it applies in this case, but they're very different legal theories. You can defend on a lack of intent, and you can also defend on legal impossibility. But I noticed Mr. Mason just said earlier that we did prove that his client intended to commit the conspiracy. He said that a few months ago. So that he had the right, that he had the necessary intent. Yes. And you could have the necessary intent to conspire to do something which is not a crime, and then you're off. Right? That is correct. And that would be legal impossibility. But that's not what he's arguing here. He's, here's what he wanted to argue. No, that is what he's arguing. You may think he's wrong, but he's arguing legal impossibility. I, he, he's, he's invoking legal impossibility, but I can demonstrate it's not legal impossibility. So he, now, what he really wanted to argue is that even if he subjectively believed that the documents they stole from Gulfstream was not authorized, the jury still had to acquit him if it independently found that the PIA authorized them. That's what he wanted to argue, and that's from page 35 to 36 of his brief. Now, my fundamental point I have to make here today is that argument confuses prosecution for a substantive or completed offense with prosecution for conspiracy. If we had prosecuted him. Okay, let me, let me give you a hypothetical. Not this case. It's this case with a little bit of a twist. Let's assume that the PIA said, until this agreement is formally terminated by one of the parties, either party can use the information from the other side in any way that it sees fit. If that's what the PIA said, could Mr. Martinez be convicted of conspiracy? Yes, he could. Why? He could if he believed that his stealing the Gulfstream documents was unauthorized. But intent is not everything. If you have, you're confusing, I think, the elements of a conspiracy charge with a defense of legal impossibility. In Johnson, everybody had to corrupt intent. But in. And they were, and they were let off because what they had conspired to do was legally impossible as a crime. So you can, if, if the three of us here corruptly conspired to do something because we think it's illegal, but it turns out not to be illegal, can we be convicted? That's different than his argument here. I know, but let's, let's answer, answer the question.  If we, if the three of us here corruptly conspire to commit an act because we think the act is illegal, but it turns out that we were mistaken and the act is actually legal, can we be convicted of conspiracy? No, that is. So tell me why that principle doesn't apply to Mr. Martinez. It doesn't, it doesn't apply because of what the Supreme Court in Jimenez-Rosillo called, quote, basic conspiracy law. The Supreme Court told us that conspiracy is an agreement to commit an unlawful act. It does not matter if the substantive act ensues. The conspiracy exists even if, because of facts unknown to the conspirators, their underlying objective is impossible. Right, that's, that's factual impossibility. Yes, and that's why I agree. I agree with someone to purchase cocaine. I go to someone who sells me the cocaine, but the cocaine turns out to be sham. I've conspired to do an illegal act. Yes, factual impossibility, but not legal impossibility. Yes. And why is this not a legal impossibility case? Well, because the principle I just described from Jimenez-Rosillo exactly describes what he wanted to argue. He wanted to argue that even if he intended, even if he believed that the Gulfstream documents were not authorized, then he had to be, the jury had to, had to acquit him, not could, but had to acquit him. No, that's not what he, no, he wanted to argue that plus one little extra step, which I think is important. He wanted to argue also that the PIA made it impossible for the act that he was alleged to have conspired to commit to be illegal. His argument was, I think, that the PIA allowed both parties to possess each other's information and allowed them to possess the information and use the information until the agreement was formally terminated. That's what Mr. Martinez did. So his use of the information from Gulfstream was not illegal. No, Your Honor, he just admitted that he intended to do something illegal because he thought, subjectively thought, that the Gulfstream documents were not authorized. But that can't, you can't substitute, well, you and I are just disagreeing, so I don't want to berate you. You're doing a good job, and I don't want to berate you. But I think you're conflating legal impossibility with intent, and you think intent swallows legal impossibility. So once you have the corrupt intent, legal impossibility washes out. I'm not sure it's that simple. No, that's not my position, Your Honor. Legal impossibility exists when the defendant's actions, even if carried out as he desires, that's the crucial phrase, would not constitute a crime. That's from this court's precedent in Oviedo. Now, he's just said that he knew, he believed, that the documents they stole from Gulfstream were not authorized. So that means, but that's what conspiracy is. That's what we charge them with. We charge them with conspiracy to take documents that they thought were unauthorized. Can I ask you a question? What was under the PIA, what was the permitted purpose? Because it says that the receiving party will use the proprietary information solely for the furtherance of the permitted purpose with the disclosing party. So, and it's the information is on a need to know. Yes. So what was the permitted purpose? So let's assume that he's correct, that the contract applies. What is the language that allowed him to do this? The language was for potential use on Gulfstream's G650 aircraft, very limited, and he's just admitted that he used it for other purposes. In fact, shared it with people totally unauthorized. APAC's entire plan was to develop their own anti-ice technology and sell it for up to $500 million to Gulfstream's competitors. That's light years from the permitted purpose. But I noticed... See, that's the stronger argument. It's not the intent issue. It's that there was no legal impossibility because, in your view, the agreement wasn't a free-for-all for people on either side of the transaction to use the information for whatever use they wanted. That's different than intent. Your Honor, we charged him with conspiracy. To prove conspiracy, we had to prove that he knowingly agreed with others with intent to commit the offense of theft of trade secrets. That's the key line. He intended. That means he himself subjectively believed that what they were stealing was not permitted. That's all we had to prove to convict him of conspiracy. The Court's spending a lot of time on the facts and the breadth of the PIA. You know, we can do that if you want to, but it's really not relevant because we charged him with conspiracy, meaning all he had to do was believe his possession was unauthorized. In fact, that's it. If that's the case, Johnson wouldn't have come out the way that it did. No. Because all three of those people in Johnson knew they were doing something illegal, knew they were doing something corrupt. And yet, the old Fifth Circuit threw out the indictment because what they were agreeing to do was not legally a crime. Exactly. That's the distinction. Even though they believed it was a crime. That's the distinction. It wasn't actually a crime. But it wasn't a crime because the trustee, you had to keep something from the trustee, and the trustee himself was involved in the conspiracy. Yes. I mean, it's an element, so you couldn't prove that element. The question here is, opposing counsel is arguing that the PIA allowed them to do this. My understanding of your argument, really, at the end of the day, is that the PIA did not allow him to do this. That's correct. But you don't need to go that far. Honestly, it doesn't matter whether it was authorized because we charged him with conspiracy, and we only had to prove that he subjectively thought it was illegal. I mean, this case is on all fours with Pettit. Pettit is all this court needs to read to affirm this conviction. In Pettit, the defendant was convicted of conspiracy to possess stolen goods. It turned out the goods were not stolen. The undercover agents borrowed the electronic goods from a store to use in the sting. That's a factual impossibility, not a legal impossibility. And that's what he's arguing here. They said, we could possibly have actually completed the substantive offense because they weren't stolen. But that's not an element of conspiracy. It's just what they intended. It's what they believed. I mean, in Pettit, this court ruled that unlike the completed offense and even attempt, conspiracy depends on the defendant's intent, not his conduct. It's not necessary to be able to commit the underlying substantive offense. This is why. That's factual impossibility. And I get that there's a very thin line between factual and legal impossibility. But that's no different than the sham cocaine example that we talked about earlier. You agree to do something which is generally unlawful, but it turns out you were at the bad end of a sting and you get sham cocaine instead of real cocaine. You can still be guilty of conspiring. And similarly, Martinez agreed with others to steal what he thought was unauthorized Gulfstream documents. And that is a crime. That is conspiracy to commit theft of trade secrets. Exactly what we charged him with. All right. Thank you very much. Okay, Mr. Mason, you've got a couple of minutes. Thank you, Your Honor. Several of counsel's statements about the facts, evidence, legal arguments. Can you can you tell me where in the PIA allowed your client to do what you purport to say he was allowed to do? Yes, his his wind tunnel test that he was working on. That's all Mr. Martinez did. It was done on a Gulfstream wing, a wing of a Gulfstream jet. He was preparing that Gulfstream jet wing to be put in a wind tunnel, and then he was preparing the types of measurements that would be taken on that wing. Mr. Martinez was a consultant for APAC. He was not making decisions or involved in any decision making or agreements about what APAC was going to do with any of its technology. He was a consultant who was paid four thousand five hundred dollars in total for a single project, which was to take a Gulfstream jet wing and prepare it to be put in a wind tunnel and tested. The four four, according to the agreement, for the benefit of Gulfstream. Yes. And when Mr. Martinez, once he did what he is alleged to have conspired to do, he was not doing it for the benefit of Gulfstream. He was doing it for the benefit of APAC and solely APAC. Right. Well, he was not doing anything except what he was hired by APAC as a consultant to do. And Mr. Martinez, I don't think there was there was proof and certainly there was not proof beyond a reasonable doubt that he was involved in anything other than receiving and using Gulfstream documents for purposes of preparing. He has had the Gulfstream documents, but for the fact that he was a Gulfstream employee. Mr. Martinez was not a Gulfstream employee. It was alleged that another person, Gilbert Basagio, was working as a contractor for Gulfstream and Mr. Basagio gave the documents to Mr. Martinez and the PIA did not preclude that. That was an important part of our argument. The PIA, and this was a Gulfstream testimony established as well, did not require a certain mechanism for distributing documents. Yeah, I'm with you all the way up to his use of the Gulfstream documents. Because if you're arresting legal impossibility on the PIA, the PIA says that the purpose of the agreement is to benefit Gulfstream for this Gulfstream wing in a wind tunnel. But once he starts using, and I grant you that if the agreement had not been formally terminated, his mere possession of the information may not have been criminal. But he's now using it for the benefit of someone other than Gulfstream. And hasn't he gone beyond the PIA and therefore eliminated the legal impossibility defense? Your Honor, what I would answer as follows. That should have been a question for the jury. I should have been permitted to make this argument to the jury. The government could have responded. Some of the jurors might have had that response. Some of them might not have. We will never know because I was not permitted to argue. I should have been permitted to say to the jury, you, the jury, have to find whether Mr. Martinez used these for some purpose that took it outside of the authorization, which would otherwise have made the crime legally impossible. Counsel, let me read to you from the PIA because it says even each party's obligation to protect previously received proprietary information shall survive any termination of this agreement. Upon termination of this agreement, each party shall either return to the disclosing party or destroy all proprietary information received under this agreement. Yes, Your Honor. But the agreement was never terminated, was never terminated. I understand that. But again, even if it was terminated, I mean, it was clear that just because you had proprietary information didn't mean that you then could, you know, give it to someone else. Well, again, that would be a good argument to make to a jury if the parties had been permitted and particularly the defense. But it suggests that if you were going to say that proprietary information was proprietary even after the termination, it clearly is proprietary during the length of the contract. It is.  The question is, and for a jury would be, did Mr. Martinez exceed the bounds of the contract? That would be a question for the jury to decide. If he did not exceed the bounds of the contract, meaning he kept the proprietary information to himself, then the crime is legally impossible and he should be acquitted. That would have been an argument that I would have made. Maybe I would have lost, but I wanted to make it. And I think the Constitution gave my client the right to have me make it. And that is why we're here today. Right. Thank you both very much. Thank you, Your Honor. Take your time setting up. I'm just going to call the next case. It is.